UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

───────────────────────────────────────────────

| | |
|---|---|
| State Farm Fire and Casualty Company, | File No. 20-cv-2439 (ECT/LIB) |
| Plaintiff, | |
| v. | **OPINION AND ORDER** |
| Jeffrey Hansen and Carol Hansen, | |
| Defendants. | |

───────────────────────────────────────────────

Lehoan T. Pham and C. Todd Koebele, HAWS-KM, P.A., St. Paul, MN, for Plaintiff State Farm Fire and Casualty Company.

Marshall H. Tanick and Stephen M. Harris, Meyer Njus Tanick, P.A., Minneapolis, MN, for Defendant Jeffrey Hansen and Carol Hansen.

───────────────────────────────────────────────

State Farm Fire and Casualty Company brought this suit seeking a declaratory judgment that it has no duty to defend or indemnify its insureds, Defendants Jeffrey and Carol Hansen, in connection with sexual-assault claims brought against Jeffrey in a case pending in the United States District Court for the Eastern District of Missouri. State Farm seeks judgment on the pleadings under Federal Rule of Civil Procedure 12(c). Contending that applicable Minnesota law is unsettled, the Hansens oppose State Farm's motion and seek certification of a question of law to the Minnesota Supreme Court that they say would clarify things. State Farm's motion will be granted, and the Hansens' motion will be denied. Relevant Minnesota law is settled, and applied here, it requires concluding that State Farm has no duty to defend or indemnify the Hansens in the sexual assault case.

*There is subject-matter (diversity) jurisdiction over this case under 28 U.S.C. § 1332(a).* The Hansens are Minnesota citizens. Compl. ¶¶ 3, 4 [ECF No. 3]; Answer [ECF No. 9] ¶¶ 3, 4. State Farm is incorporated under Illinois law and maintains its principal place of business there. Compl. ¶ 2; Answer ¶ 2. Whether the jurisdictional amount-in-controversy threshold is met in a declaratory judgment case like this depends on "the value of the object of the litigation." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977). Here, the value of the object of this litigation unquestionably "exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). The complaint in the underlying case (which was filed in federal district court on the basis of diversity jurisdiction) includes the assertion that "each Plaintiff is seeking damages exceeding $75,000, exclusive of fees and costs." Compl. Ex. A [ECF No. 3-1 at 1] ¶ 7. And the at-issue insurance policies have coverage limits above that amount. *Id.* Ex. B [ECF No. 3-1 at 20]; *id.* Ex. C [ECF No. 3-1 at 64].

*The underlying Eastern District of Missouri case is based entirely on the allegation that Jeffrey drugged and raped Katherine Anderson.* Jeffrey is the lone defendant in the case. Compl. Ex. A at 1 (Complaint in *Anderson v. Hansen*, No. 4:20-cv-991-JAR (E.D. Mo.)). The plaintiffs are Katherine and Jason Anderson, a married couple who are citizens of Colorado. *Id.* ¶¶ 4–5. Relevant here, the Andersons allege that Katherine was a Regional Sales Coordinator and independent contractor with American Family Life Assurance Company of Columbus ("Aflac"). *Id.* ¶¶ 4, 13, 14. Jeffrey was employed by Aflac as a Business Development Manager. *Id.* ¶¶ 17, 18. From August 29 to 30, 2018, Katherine and Jeffrey were in St. Louis, Missouri to attend an Aflac business meeting. *Id.*

¶ 20; *see also id.* ¶¶ 25, 28.  On the evening of August 29, Katherine accompanied a group of meeting attendees to dinner and then to a bar.  *Id.* ¶¶ 26–27.  At the bar, Jeffrey ordered Katherine a drink though "she did not want any more alcohol."  *Id.* ¶ 28.  Jeffrey subsequently replaced Katherine's unfinished drink with a new cocktail.  *Id.* ¶ 30. Katherine—who by this point had difficulty walking and felt sick and dizzy—returned to her hotel, accompanied by other attendees, including Jeffrey.  *Id.* ¶¶ 33, 34.  Two colleagues helped Katherine to her hotel room, where she passed out alone on the bed.  *Id.* ¶ 36.  At some point after midnight (on August 30), Katherine woke to the sound of someone knocking on her hotel room door.  *Id.* ¶ 38.  When she opened the door, Jeffrey pushed past her into the room.  *Id.* ¶ 39.  Jeffrey then raped Katherine.  *Id.* ¶¶ 43-52.  Katherine sought medical attention later that morning.  *Id.* ¶ 51.  "The hospital performed a rape kit on [Katherine], which confirmed that she had sexual intercourse."  *Id.* ¶ 52.  Katherine received treatment.  *Id.* ¶ 53.  She "continued to feel symptoms of illness that were inconsistent with an alcohol-induced hangover."  *Id.* ¶ 54.  Katherine believed that Jeffrey had drugged her drink the night before.  *Id.* ¶ 55.  Jeffrey has admitted having sexual intercourse with Katherine; he claims the encounter was consensual.  *Id.* ¶ 57.[1]

---

[1]   In his answer in the underlying case (and here), Jeffrey denies drugging or raping Katherine.  *See generally* J. Hansen Decl. [ECF No. 40] ¶ 2; *id.* Ex. 2 [ECF No. 40-1 at 21–39].  Jeffrey also has filed in this case excerpts of a police report indicating that second-degree rape charges against Jeffrey were refused by the Office of Prosecuting Attorney in St. Louis County, Missouri "for lack of evidence."  *Id.* Ex. 3 [ECF No. 40-1 at 43].  These documents also show that the responsible Assistant Prosecuting Attorney concluded "there was no need to proceed" with a crime lab request for DNA samples "since both Hansen and Anderson admitted to the sexual encounter."  *Id.* [ECF No. 40-1 at 43, 45].  Evidently as a result, the case was "reclassified as 'Exceptionally Cleared.'"  *Id.* [ECF

*Katherine and her husband, Jason, assert damages claims in the underlying case arising only from the alleged drugging and rape.* Katherine and Jason assert claims for battery, assault, and false imprisonment under Missouri law. *Id.* ¶¶ 71–77 (battery arising from non-consensual administration of intoxicating substance); *id.* ¶¶ 88–95 (battery arising from forcible sexual contact); *id.* ¶¶ 78–82 (assault); *id.* ¶¶ 83–87 (false imprisonment). They assert claims under Colorado law for tortious interference with contract, ongoing business relationship, and prospective business relations, and for loss of consortium. *Id.* ¶¶ 96–115 (tortious interference); *id.* ¶¶ 116–17 (loss of consortium). Katherine alleges that she has suffered "trauma-related symptoms, including night terrors, panic attacks, anxiety, depression, insomnia, and suicidal ideations." *Id.* ¶ 59. She alleges that these "symptoms have had a profound and lasting impact on her career, daily activities, and personal and professional relationships." *Id.* ¶ 60; *see also id.* ¶¶ 61–70. Katherine and Jason seek economic and non-economic compensatory damages and punitive damages, among other remedies. *Id.* at 16–17, ¶¶ A–F.

*Jeffrey tendered defense, and requested indemnification, under two State Farm policies, and State Farm filed this case.* State Farm issued both policies to the Hansens. The first is a homeowners' policy in effect from November 9, 2017, through November 8, 2018. Compl. Ex. B. The second is a personal liability umbrella policy in effect from January 3, 2018, to January 3, 2019. Compl. Ex. C. Evidently since receiving Jeffrey's tender, State Farm has defended him in the underlying case, paying the legal fees of

---

No. 40-1 at 43] at 39. Though the record here does not define it, this classification is inferred to favor Jeffrey.

4

Jeffrey's chosen counsel under a reservation of rights. Pl.'s Mem. in Supp. [ECF No. 32] at 3; Defs.' Mem. in Opp'n [ECF No. 35] at 4 n.3. State Farm filed this suit under the Declaratory Judgments Act, 28 U.S.C. § 2201, seeking a declaration that it "has no duty defend and no duty to indemnify [Jeffrey] in the underlying lawsuit[]" under either the homeowners' policy or the umbrella policy. Compl. ¶¶ 1, 41, 43.[2]

"Judgment on the pleadings is appropriate where no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law." *Lansing v. Wells Fargo Bank, N.A.*, 894 F.3d 967, 971 (8th Cir. 2018). A motion for judgment on the pleadings is assessed under the same standard as a Rule 12(b)(6) motion. *Ashley Cnty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). Under that standard, a court must accept as true all well-pleaded factual allegations in the relevant pleadings and draw all reasonable inferences in the non-moving party's favor. *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014) (citation omitted). Although the factual allegations need not be detailed, they must be sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). A pleading's allegations must "state a claim to relief that is plausible on its face." *Id*. at 570. Considering "matters outside the pleadings" generally transforms a Rule 12(b)(6) motion into one for summary

---

[2] Originally, State Farm named Katherine and Jason Anderson as defendants, anticipating the possibility that they might seek to assert rights under the Hansens' insurance policies. Compl. ¶¶ 5–6. But the Andersons subsequently were dismissed pursuant to a stipulation. ECF No. 19; Pl.'s Mem. in Supp. at 2 n.2. Also, though she continues to be a defendant in this case, Carol Hansen had nothing to do with the events giving rise to the underlying case. State Farm named Carol as a defendant in this case simply because she is a named insured on both of the at-issue policies. Compl. ¶ 4; Pl.'s Mem. in Supp. at 2 n.1.

judgment, but not when the relevant documents are "necessarily embraced" by the pleadings. *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017) (citation omitted). Among the categories of documents necessarily embraced by the pleadings are "exhibits attached to the complaint whose authenticity is unquestioned." *Id.* (cleaned up). Here, the Parties cite exhibits attached to pleadings, and no party has questioned the exhibits' authenticity. *See* Compl. Exs. A–C [ECF No. 3-1]; Hansen Decl. Exs. 1–3 [ECF No. 40-1]. Therefore, consideration of these materials does not require transforming State Farm's Rule 12(c) motion into one for summary judgment.

*Based on the Parties' agreement, Minnesota law will be applied to interpret and apply the policies.* This case turns on the construction of insurance policies issued in Minnesota to Minnesota citizens, and one of the policies insured property in Minnesota. *See* Compl. ¶¶ 3, 4; *id.* Ex. B [ECF No. 3-1 at 19] at 1; *id.* Ex. C [ECF No. 3-1 at 64]. The Parties agree that Minnesota law governs the policies' interpretation. *See* Pl.'s Mem. in Supp. at 11–12; Defs.' Mem. in Opp'n at 5–7. Therefore, Minnesota law will be applied here. *See Neth. Ins. Co. v. Main Street Ingredients, LLC*, 745 F.3d 909, 913 (8th Cir. 2014) ("Because the parties do not dispute the choice of Minnesota law, we assume, without deciding, Minnesota law applies . . ."); *see also Progressive N. Ins. Co. v. McDonough*, 608 F.3d 388, 390 (8th Cir. 2010).

*Minnesota law establishes several relevant rules for interpreting the at-issue policies.* Pl.'s Mem. in Supp. at 11; Defs.' Mem. in Opp'n at 5. "Interpretation of an insurance policy and application of the policy to the facts in a case are questions of law . . . ." *Am. Fam. Ins. Co. v. Walser*, 628 N.W.2d 605, 609 (Minn. 2001). Unambiguous terms

6

are given their "plain and ordinary meaning," while ambiguous language is construed liberally in favor of coverage. *Travelers Indem. Co. v. Bloomington Steel & Supply Co.*, 718 N.W.2d 888, 894 (Minn. 2006). Undefined policy terms are ambiguous when they "are reasonably susceptible to more than one interpretation." *Gen. Cas. Co. v. Wozniak Travel, Inc.*, 762 N.W.2d 572, 575 (Minn. 2009); *see also Carlson v. Allstate Ins. Co.*, 749 N.W.2d 41, 45–46 (Minn. 2008). "In deciding whether an ambiguity truly exists, however, a policy must be read as a whole." *Ritrama, Inc. v. HDI-Gerling Am. Ins. Co.*, 796 F.3d 962, 969 (8th Cir. 2015) (quoting *Mut. Serv. Cas. Ins. Co. v. Wilson Twp.*, 603 N.W.2d 151, 153 (Minn. Ct. App. 1999)). Courts apply different rules when interpreting affirmative grants of coverage versus exclusions. Grants of coverage are construed broadly, and the policyholder has the burden to show that coverage exists. *Wozniak Travel*, 762 N.W.2d at 575; *Eng'g & Constr. Innovations, Inc. v. L.H. Bolduc Co.*, 825 N.W.2d 695, 705 (Minn. 2013). By contrast, courts construe exclusions narrowly, and the insurer has the burden to show that an exclusion precludes coverage. *Thommes v. Milwaukee Mut. Ins. Co.*, 622 N.W.2d 155, 158 (Minn. Ct. App. 2001).

*Minnesota law also establishes relevant rules for deciding whether the duty to defend or indemnify has been triggered.* A liability insurer assumes two duties to its insured: a duty to defend and a duty to indemnify. *Reinsurance Ass'n of Minn. v. Timmer*, 641 N.W.2d 302, 307 (Minn. App. 2002) (quotation omitted). An insurer's duty to defend is broader than the duty to indemnify. *Meadowbrook, Inc. v. Tower Ins. Co.*, 559 N.W.2d 411, 415 (Minn. 1997). A duty to defend arises "when any part of the claim is arguably within the scope of the policy's coverage, and an insurer who wishes to escape the duty

7

has the burden of showing that all parts of the cause of action fall clearly outside the scope of coverage." *Jostens, Inc. v. Mission Ins. Co.*, 387 N.W.2d 161, 165–66 (Minn. 1986) (quotation omitted). "Absent any knowledge to the contrary, an insurer may make an initial determination of whether it has a duty to defend from the factual allegations in the complaint." *FACE, Festivals and Concert Events, Inc. v. Scottsdale Ins. Co.*, 632 F.3d 417, 420 (8th Cir. 2011) (citing *Garvis v. Emp'rs Mut. Cas. Co.*, 497 N.W.2d 254, 258 (Minn. 1993)). "Where the pleadings do not raise a claim arguably within the scope of coverage, the insurer has no duty to defend or investigate further to determine whether there are other facts present which trigger such a duty." *Id.* (quoting *Garvis*, 497 N.W.2d at 258). "When it can be concluded as a matter of law that there is no basis upon which an insurer may be obligated to indemnify the insured, the insurer is relieved of its duty to defend." *Woida v. N. Star Mut. Ins. Co.*, 306 N.W.2d 570, 574 (Minn. 1981) (citations omitted).

*The complaint in the underlying lawsuit raises no claim arguably within the scope of either the homeowners' or umbrella policy's affirmative grants of coverage.* The homeowners' policy generally provides personal liability coverage for a "claim" or "suit" "brought against an **insured** for damages because of **bodily injury** or **property damage** to which this coverage applies, caused by an **occurrence**." Compl. Ex. B [ECF No. 3-1 at 47] at 23. The umbrella policy provides coverage "[i]f a claim is made or suit is brought against an **insured** for damages because of a **loss** for which the **insured** is legally liable and to which the policy applies." *Id.* Ex. C [ECF No. 3-1 at 73] at 6. The two policies share functionally equivalent definitions of "**occurrence**" and "**loss**." The homeowners'

policy defines "*occurrence*" as an "accident" that results in bodily injury. *Id.* Ex. B at 3–4. The umbrella policy defines "**loss**" as "an accident" that "results in bodily injury." *Id.* Ex. C at 2. Though neither policy defines "accident," the Minnesota Supreme Court has, as "an unexpected, unforeseen, or undesigned happening or consequence." *Walser*, 628 N.W. 2d at 611–12. Faithful to this general definition, the Minnesota Supreme Court has recognized that sexual assaults ordinarily "cannot be characterized as 'accidents.'" *Allstate Ins. Co. v. S.F.*, 518 N.W.2d 37, 40 (Minn. 1994); *see Warren v. Am. Fam. Ins. Co.*, No. C5-96-2003, 1997 WL 104904, at *3 (Minn. Ct. App. Mar. 11, 1997) (recognizing that nonconsensual sexual contact "was not an accident because it was expected, foreseen, or designed," and holding there was no duty to defend because "it was not an 'occurrence' under [the relevant] policy"). Jeffrey argues that there is coverage because "the incident was wholly consensual" and he did not intend to injure Katherine. Defs.' Mem. in Opp'n at 10. An insured's denial of a sexual assault—or here, the possibility that Jeffrey may persuade a jury that Katherine consented to sex—does not show a claim arguably within the scope of coverage. *See S.F.*, 518 N.W.2d at 40 (Minn. 1994) ("The fact that the insured and his companions deny any assaultive behavior is of no help to complainant's case, because if the sexual conduct was consensual, as the insured claims, there is no tort cause of action."); *FACE, Festivals and Concert Events, Inc.*, 632 F.3d at 421 (8th Cir. 2011) ("If Fanning did commit an assault, then the assault and battery exclusion applied to defeat coverage. If Fanning did not commit an assault, then FACE was not legally obligated to pay damages . . . , and coverage was not implicated. There was no potential outcome of the trial that would require Scottsdale to indemnify FACE, and the insurer thus had no duty

9

to defend." (citation omitted)).  In other words, if Katherine prevails, the fact that she alleges only intentional acts means that any damages Jeffrey might be ordered to pay would not be covered under either policy, and Jeffrey's denials do not change the intentional character of Katherine's allegations.

*Affirmative grants of coverage aside, the policies' intentional-act exclusions bar coverage.*  The homeowners' policy excludes coverage for "**bodily injury**" resulting from a "willful and malicious . . . act . . . of the **insured**" or that "was intended by the **insured**." Compl. Ex. B [ECF No. 3-1 at 49] at 25.  The umbrella policy excludes coverage for "**bodily injury**" that is "either expected or intended by the **insured** . . . or . . . the result of any willful or malicious act of the **insured**." *Id.* Ex. C [ECF No. 3-1 at 76] at 9.  Minnesota courts, and courts applying Minnesota law, generally and frequently hold that alleged sexual assaults fall within the scope of intentional-injury exclusions. *E.g.*, *Auto-Owners Ins. Co. v. Todd*, 547 N.W.2d 696, 699–700 (Minn. 1996); *S.F.*, 518 N.W.2d at 40 ("[S]exual assaults . . . surely cannot be characterized as 'accidents' and they clearly come within the intentional act exclusion of the policy." (citation omitted)).[3]  The Minnesota Court of Appeals' decision in *State Farm Fire and Casualty Co. v. Sipola*, No. A18-0295, 2018 WL 4289014, at *2 (Minn. Ct. App. Sept. 10, 2018), is especially apt.  There, the court addressed whether State Farm had a duty to defend and indemnify an insured who

---

[3]    *See also State Farm Fire and Cas. Co. v. Williams*, 355 N.W.2d 421, 425 (1984); *Estate of Lehmann v. Metzger*, 355 N.W.2d 425, 426 (Minn. 1984); *Rulli v. State Farm Fire and Cas. Co.*, 479 N.W.2d 87, 88–89 (Minn. Ct. App. 1992); *Doe v. Dickson*, No. C7-97-313, 1997 WL 561252, at *2–3 (Minn. Ct. App. Sept. 9, 1997); *Warren*, 1997 WL 104904, at *3–4; *FACE*, 632 F.3d at 420–21.

had been sued for drugging, kidnapping, and raping a woman. *Id.* at *1. The insured's renters' policy—like the policies here—excluded coverage for bodily injury "expected or intended by the insured" or that "which is the result of willful and malicious acts of the insured." *Id.* Relying on Minnesota Supreme Court precedent, the Court of Appeals held that State Farm had no duty to defend or indemnify the insured for the claims—including assault, battery, and negligence—that arose out of the alleged sexual assault. *Id.* at *2–3. In reaching that holding, the court repeated the general rule: "[C]laims of nonconsensual sexual assault and battery invoke the intentional injury exclusion as a matter of law." *Id.* at *2 (quoting *R.W. v. T.F.*, 528 N.W.2d 869, 873 (Minn. 1995)). Jeffrey argues that his intent "cannot be established here by simply looking at the face of [the] complaint in the Missouri case." Defs.' Mem. in Opp'n at 17. This is not correct. The Minnesota Supreme Court "infer[s] an insured's intent to harm in cases of nonconsensual sexual conduct as a matter of law so as to preclude insurance coverage." *Todd*, 547 N.W.2d at 699. Jeffrey also argues that *Sipola* is distinguishable because "the insured was accused of brutally sexually assaulting the plaintiff" and the insured presented no exculpatory evidence. Defs.' Mem. in Opp'n at 20. This is not persuasive. No authority is cited to support the idea that State Farm's duty to defend or indemnify turns on the degree of brutality alleged in the underlying case, and, as noted already, the fact that Jeffrey disputes Katherine's claims is beside the point. *S.F.*, 518 N.W.2d at 40; *FACE*, 632 F.3d at 421. Finally, Jeffrey argues that, if Katherine's assault and battery claims are not covered, her claims for false imprisonment, tortious interference, and loss of consortium are. Defs.' Mem. in Opp'n at 26–29. The Minnesota Supreme Court has rejected this approach, holding that courts

11

resolving coverage questions "should look to the 'overall intentional plan' of the insured," and that claims are excluded when they are "inextricably linked with and part of the overall intentional plan of" the insured to commit a sexual assault. *Todd*, 547 N.W.2d at 699–700 (quoting *S.F.*, 518 N.W.2d at 41). Here, all of Katherine's claims arise from her allegation that Jeffrey drugged and raped her. No other plan is alleged or identified.[4]

*Affirmative grants of coverage aside, the policies' sexual-act exclusions bar coverage.* The homeowners' policy excludes coverage for "**bodily injury** . . . arising out of any actual, alleged, or threatened . . . sexual harassment, sexual molestation, or sexual misconduct . . . [or] physical or mental abuse . . . by the **insured**." Compl. Ex. B at [ECF No. 3-1 at 51] 27. The umbrella policy excludes coverage for "**loss** arising out of alleged or actual . . . sexual harassment . . . [or] sexual molestation . . . by the **insured**." *Id.* Ex. C [ECF No. 3-1 at 74] at 7. The terms "sexual harassment," "sexual molestation," or "sexual misconduct" are not defined in either policy. As with the grant-of-coverage question and the intentional-act exclusions, Jeffrey argues that the sexual-act exclusions cannot apply because there was in fact no sexual assault. Defs.' Mem. in Opp'n at 21–26. This argument seems weakest with respect to these exclusions because they apply explicitly to "alleged" sexual harassment, sexual molestation, or (specific to the homeowners' policy) sexual misconduct. In other words, applying the plain text of these exclusions, Katherine's allegations are enough. Jeffrey also argues that his actions cannot qualify as "sexual

---

[4] Jeffrey does not argue that the seemingly overlapping character of the policies' coverage grants and their intentional-act exclusions warrants reading one or the other more narrowly or in a way that, for this reason, might trigger the duty to defend or indemnify.

12

harassment" or "sexual misconduct," and that "sexual molestation" should be defined to include only sexual acts against children. This would be an unreasonably narrow understanding of that term. The Minnesota Court of Appeals has broadly defined "molest" as "[t]o accost and harass sexually." *Warren*, 1997 WL 104904, at *4 (citation omitted). Relying on this definition, the Court of Appeals held that "[a]t the very least the nonconsensual conduct alleged in the complaint is molestation," and that the sexual act exclusion applied. *Id*. Similarly, Black's Law Dictionary defines molestation independently from child molestation, with the broader term "molestation" meaning "[t]he act of making unwanted and indecent advances to or on someone, esp. for sexual gratification." *Molestation*, *Black's Law Dictionary* (11th ed. 2019). Under these commonly used definitions, Katherine's allegations fall within these exclusions.

*Defendants' certification motion will be denied because, as the preceding discussion suggests, the decision to enter judgment for State Farm is driven by settled principles of Minnesota law.* The Minnesota Supreme Court "may answer a question of law certified to it by a court of the United States . . . if the answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling appellate decision, constitutional provision, or statute of this state." Minn. Stat. § 480.065, subd. 3. "Through certification of novel or unsettled questions of state law for authoritative answers by a State's highest court, a federal court may save 'time, energy, and resources and hel[p] build a cooperative judicial federalism.'" *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 77 (1997) (citations omitted). "Absent a close question and lack of state sources enabling a nonconjectural determination, a federal court should not avoid its responsibility to

determine all issues before it." *Smith v. SEECO, Inc.*, 922 F.3d 406, 412 (8th Cir. 2019) (quoting *Shakopee Mdewakanton Sioux Cmty. v. City of Prior Lake*, 771 F.2d 1153, 1157 n.2 (8th Cir. 1985)). "The most important consideration guiding the exercise of this discretion . . . is whether the reviewing court finds itself genuinely uncertain about a question of state law . . . . " *Johnson v. John Deere Co.*, 935 F.2d 151, 153–54 (8th Cir. 1991) (quoting *Tidler v. Eli Lilly & Co.*, 851 F.2d 418, 426 (D.C. Cir. 1988)). Here, the question Defendants ask to have certified—whether "an allegation of sexual assault and related claims . . . negate an insurance carrier's duty to defend its insured when the allegations are categorically denied by the insured and there is no cognizable evidence in this case refuting the denial" [ECF No. 36]—is the subject of several Minnesota decisions that enable a nonconjectural decision here, meaning the certification motion should be denied.

## ORDER

Based on the foregoing, and on all the files, records, and proceedings herein, **IT IS ORDERED THAT:**

1. Plaintiff's Motion for Judgment on the Pleadings [ECF No. 30] is **GRANTED**;

2. Plaintiff State Farm Fire and Casualty Company has no duty to defend or indemnify Jeffrey Hansen for the claims asserted in *Anderson v. Hansen*, No. 4:20-cv-991-JAR (E.D. Mo.); and

3. Defendants' Motion for Certification of Question [ECF No. 36] is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: February 7, 2022

s/ Eric C. Tostrud
Eric C. Tostrud
United States District Court